UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60006-CR-COHN(s)(s)(s)/SNOW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JOSEPH RUSSO, JR. et al.

      Defendants.
_____

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on defendant **Christopher George Simon's** Motion to Suppress (DE 955), which was referred to United States Magistrate Judge, Lurana S. Snow, for report and recommendation. The defendant is charged by indictment with RICO conspiracy (Count 1), conspiracy to possess with intent to distribute and to import 1,000 kilograms or more of marijuana (Counts 2 and 3), conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count 4) and conspiracy to launder money (Count 5). The defendant seeks to suppress evidence seized from him and his vehicle following a traffic stop on February 21, 2007, and statements made by him following the stop. An evidentiary hearing was held on the motion on September 11, 2007.

### I. FACTS PRESENTED

The sole witness at the suppression hearing was Pennsylvania State Police Trooper Michael J. Volk. Trooper Volk

testified that he is assigned to patrol the Pennsylvania Turnpike in the western part of the state, near the Ohio border. On the evening of February 21, 2007, the trooper observed a Nissan Altima with darkly tinted windows, which he knew to be a violation of Pennsylvania law. Trooper Volk followed the vehicle for about three miles, at which time he activated his siren and light, which also activated a video camera in the police vehicle.[1] The Altima responded by pulling over to the shoulder of the road.

Trooper Volk approached the vehicle and noted that he could not see through the glass on the driver's window. With the window partially open, the trooper asked the defendant for his driver's license. The defendant produced a California license in the name of Matt Crocker. The defendant told Trooper Volk that he originally was from Pennsylvania and that he had borrowed the car from a friend.

Trooper Volk returned to his vehicle and ran a check of the defendant's license in the California data base. Initially, the trooper checked for a license in the name of Matt Crocker. When the response came back that no California license had been issued in that name, Trooper Volk checked by using the number on the license. Again, the response came back that no California license had been issued bearing that number. Trooper Volk also learned that the Altima belonged to an individual whose driver's license had been suspended in Pittsburgh.

---

[1] The DVD generated at the time of the traffic stop was introduced into evidence at the hearing and played in court during Trooper Volk's testimony.

Trooper Volk then returned to the defendant and advised him that he would be issuing a warning for the window tinting. He shook hands with the defendant, but then called to the defendant as he was about to get back into his vehicle.[2] The trooper asked the defendant if he had any other identification inside the car, explaining that there was some difficulty with the ID the defendant had produced. He also asked if the defendant had a problem with the trooper searching the vehicle. The defendant replied "no," and Trooper Volk gave the defendant a consent to search document to read if he wished. The defendant signed the consent to search and told the trooper that he had had the California license for more than a year.

The female passenger, who said that her name was Sasha Garcia, told Trooper Volk that she did not have any identification with her. According to the passenger, she had just flown from California to Cleveland, where the boarding guard had retained her ID and boarding card. The trooper asked the passenger to step out of the car. He then asked the defendant and the passenger if they had any firearms, and both responded that they did not.

Trooper Volk then searched the vehicle, recovering credit cards in the name of Matt Crocker and a social security card. When the search was concluded, the trooper handcuffed the defendant and placed him under arrest. The passenger also was detained. Trooper Volk did not specifically recall advising the defendant of his

---

[2] Trooper Volk explained that Pennsylvania law requires a break between a traffic stop and a separate criminal investigation.

Miranda rights, but stated that it is his standard procedure to do so at the time an arrest is made.

The defendant and his passenger then were transported in separate vehicles to the Pennsylvania State Police barracks. Trooper Volk drove the defendant to the barracks, but had only general conversation with him en route. Upon arrival at the barracks, someone other than Trooper Volk fingerprinted and questioned the defendant. Also at the barracks, the passenger finally produced identification in a name different from the one she had provided to Trooper Volk. The passenger was not charged with any offense.

Later that evening, the defendant sent word to Trooper Volk that he wanted to talk to him. By that time, the trooper had learned that the defendant's true name was Christopher Simon and that he was a wanted fugitive. The defendant told Trooper Volk that he was sorry for lying to him and had not meant to insult his intelligence. The defendant also stated that he had been out on warrants for about two years, and talked about having to fly his mother to various locations in order to see her. Trooper Volk told the defendant that he had no hard feelings and might have done the same thing if he were in the defendant's place. The trooper asked no questions of the defendant.

On cross examination, Trooper Volk testified that Pennsylvania law requires an unobstructed view of the interior of a vehicle. He explained that factory tinting is permissible, but after-market tinting is not. The trooper stated that with fifteen

years on the job, he easily can identify after-market tinting. On the defendant's vehicle, the film on the window was clearly visible. Trooper Volk related that, depending on the individual circumstances, he will issue a ticket or a warning for improper window tinting.

## II. RECOMMENDATIONS OF LAW

The defendant first contends that Trooper Volk did not have probable cause or reasonable suspicion to stop the defendant's vehicle, arguing that under the conditions on the night in question, it was impossible for Trooper Volk to determine whether the window tinting on the Altima violated Pennsylvania law. The parties agree that a routine traffic stop is treated as an investigative detention, governed by the principles of Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, the duration and scope of the traffic stop must be reasonable in light of the circumstances which justified the stop in the first place. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001), quoting Terry, 392 U.S. at 20.

The law also is clear that an officer conducting a traffic stop may take such steps as are reasonably necessary to protect his personal safety, which include conducting a protective search of the driver, passengers and vehicle; seizing any contraband, including weapons, in plain view; using a flash light to illuminate a vehicle's dark interior, and prolonging the detention in order to investigate the driver's license, vehicle registration and criminal history by means of a computer check.

5

Purcell, 236 F.3d at 1277-78. Additionally, the officer is entitled to ask the driver if there were firearms or narcotics in the vehicle. Id. at 1280.

In the instant case, Trooper Volk credibly testified that he has had fifteen years of practice, and can easily spot whether a vehicle has after-market tinting on its windows. Trooper Volk stated that he was virtually certain that the window tinting on the defendant's vehicle was in violation of Pennsylvania law.[3] In fact, when Trooper Volk approached the driver's side of the vehicle, he was able to see the film on the window which demonstrated after-market tinting.

The undersigned finds that Trooper Volk had probable cause to stop the defendant for a window tinting violation. At that point, he was authorized to run a computer check on the defendant's driver's license and the vehicle registration. Once Trooper Volk received information that the defendant had not produced a valid driver's license, it was reasonable for him to investigate further by asking the defendant about the California license and whether there were any other identification documents in the car.

---

[3] The parties have stipulated that the applicable Pennsylvania statute provides that "no person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle," but that the statute does not apply to "a vehicle which is equipped with tinted windows of the type and specification that were installed by the manufacturer of the vehicle."

The undersigned also finds that the defendant voluntarily consented to the search of the vehicle. In <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973), the United States Supreme Court held that an officer conducting a routine traffic stop may request consent to search the vehicle. Such a consensual search is permissible as long as it is the product of "essentially free and unconstrained choice." <u>Id.</u> at 225. The voluntariness of a person's consent is a factual issue and depends upon the totality of the circumstances surrounding it. <u>Id.</u> at 248-9.

Here, the defendant argues that Trooper Volk's question, "You don't have a problem if I search, do you?" was somehow more coercive than a straightforward request for permission to search. The undersigned does not believe that the form of the question was coercive in any way. Moreover, it was clear from the DVD that the trooper was polite and the defendant immediately agreed to the search and signed the consent to form.

The defendant also suggests that the presence of other troopers created a coercive atmosphere. However, Trooper Volk stated that the backup officer was parked out of the defendant's sight, and the DVD did not show the presence of any officer other than Trooper Volk. The defendant did not offer any testimony or other evidence that his consent to search was not voluntary, and there was nothing in the DVD to suggest any overt or implied pressure on the defendant.

Finally, the statements made by the defendant to Trooper Volk at the Pennsylvania State Police barracks were not the product

of custodial interrogation. The defendant asked to see the trooper, who asked no questions of the defendant and merely listened to what the defendant had to say. Such statements clearly were voluntary and should not be suppressed.

Based on the evidence presented at the hearing, the Motion to Suppress should be denied. Counsel for the defendant informed the Court that he has issued subpoenas for records from California and Oklahoma. Counsel stated that the defendant had been stopped for a traffic violation in Oklahoma without any questions being raised about the California driver's license. Based on this event, defense counsel is interested in what information actually was communicated to Trooper Volk and to the officer in Oklahoma regarding that license.

The undersigned advised counsel for the defendant that he could present additional information and argument to the district judge, and the judge would determine whether to consider the new material. Meanwhile, since the trial date is fast approaching, the undersigned denied counsel's request to adjourn the hearing pending responses to the outstanding subpoenas.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Motion to Suppress (DE 955) be DENIED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which

to file written objections, if any, with The Honorable James I. Cohn, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 488 U.S. 958 (1988); <u>RTC v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 13th day of September, 2007.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Brian McCormick (FTL)
Howard Srebnick, Esq.